1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   NATHAN M.K.,

11                         Plaintiff,

                 v.

12   COMMISSIONER OF SOCIAL
     SECURITY,

13

14                         Defendant.

CASE NO. 3:24-CV-5287-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

15          Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's

16   denial of his applications for supplemental security income benefits ("SSI") and disability

17   insurance benefits ("DIB").[1] After considering the record, the Court concludes the

18   Administrative Law Judge ("ALJ") erred in his evaluation of Plaintiff's subjective symptom

19   testimony. Had the ALJ properly addressed Plaintiff's testimony, he may have included

20   additional limitations in Plaintiff's residual functional capacity ("RFC") or reached a different

21   conclusion regarding disability. The ALJ's error is, therefore, not harmless, and this matter is

22

23

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have
consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

1  reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of

2  Social Security ("Commissioner") for further proceedings consistent with this order.

3  **I.      Factual and Procedural History**

4         Plaintiff filed claims for DIB and SSI on January 21, 2022, alleging disability beginning

5  July 1, 2021. Dkt. 7, Administrative Record ("AR") 282–96, 301–09. His applications were

6  denied at the initial level and on reconsideration. AR 189–91, 206. He requested a hearing before

7  an ALJ, which took place on August 1, 2023. AR 119–54, 226–27. Plaintiff was represented by

8  counsel at the hearing. *See* AR 119. On September 27, 2023, the ALJ issued an unfavorable

9  decision denying benefits. AR 15–34. The Appeals Council denied Plaintiff's request for review,

10  making the ALJ's decision the final decision of the Commissioner. AR 1–7, 280–81; *see also*

11  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff appealed to

12  this Court. *See* Dkts. 1, 5.

13  **II.     Standard of Review**

14         When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court

15  may set aside the denial of social security benefits if the ALJ's findings are based on legal error

16  or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

17  1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial

18  evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

19  conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*,

20  305 U.S. 197, 229 (1938)). "We review only the reasons provided by the ALJ in the disability

21  determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v.*

22  *Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

23

24

1    "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*,

2    674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

3    Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

4    the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

5    1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

6    **III.    Discussion**

7    Plaintiff contends the ALJ erred in considering Plaintiff's testimony about the severity of

8    his symptoms of his mental impairments, particularly his hallucinations. Dkt. 9 at 3. He asserts

9    the proper remedy for this error is remand for further administrative proceedings. *Id.* at 1.

10    "An ALJ engages in a two-step analysis to determine whether a claimant's testimony

11    regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. At the first step,

12    the ALJ determines whether the claimant has presented objective medical evidence of an

13    underlying impairment that could reasonably be expected to produce the pain or other symptoms

14    alleged. *Id.* This evidence need not validate the severity of the alleged symptoms; rather, "the

15    medical evidence need only establish that the impairment could reasonably be expected to cause

16    some degree of the alleged symptoms." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

17    If the claimant satisfies this first step and there is no affirmative evidence of malingering,

18    "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by

19    offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759

20    F.3d at 1014–15). "This standard is 'the most demanding required in Social Security cases.'" *Id.*

21    (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this

22    standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-*

23    *Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

24

1       The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ

2   to make "specific finding[s]:"

3           [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a
            claimant's testimony by simply reciting the medical evidence in support of his or
4           her residual functional capacity determination. To ensure that our review of the
            ALJ's credibility determination is meaningful, and that the claimant's testimony is
5           not rejected arbitrarily, we require the ALJ to specify which testimony she finds
            not credible, and then provide clear and convincing reasons, supported by evidence
6           in the record, to support that credibility determination.

7   *Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether

8   our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

9   power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by

10  the ALJ, the specific, clear, and convincing reasons also must be supported by substantial

11  evidence in the record as a whole. *See* 42 U.S.C. § 405(g).

12      Plaintiff alleged he was unable to work due to schizoaffective disorder bipolar type,

13  attention deficit hyperactivity disorder ("ADHD"), borderline personality disorder, anxiety, and

14  depression. AR 325, 330. He stated these conditions caused hallucinations, anxiety, inability to

15  focus, dissociation, and problems with mood and motivation. AR 317.

16      At the hearing in August 2023, Plaintiff testified he lived with his father and sister. AR

17  127. He stated his household chores included cleaning his room, the bathroom, and the kitchen,

18  but he sometimes needed help from his father when his fluctuating mood made it difficult to

19  complete these tasks. AR 128–29. Plaintiff used his car to go grocery shopping with his father

20  but did not regularly drive anywhere else. AR 135–36.

21      Plaintiff stated he enjoyed reading, writing, watching cartoons, and playing video games.

22  AR 129. At times, he could play video games for up to four to six hours in one sitting, but he

23  explained his attention span was "very bad," so "it's not reliable what I will sit and do for a long

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

1    time." AR 129–31. When he could not concentrate, he would "[p]lay something [else], watch

2    something, [or] maybe go try to hang out with my dad". AR 131. He stated he became anxious

3    and uncomfortable around others, even his father and sister, and he did not have many friends.

4    AR 129, 132–33.

5        Plaintiff described the barriers keeping him from holding a job, which included problems

6    with concentration and interacting with others, anxiety, depression, panic attacks, and mood

7    swings. AR 133–34. He also stated it was very common for him to hallucinate, especially if he

8    was under stress. AR 134. These symptoms persisted even while he was on medication. *Id.*

9        Plaintiff stopped working in July 2021 because he was experiencing mood swings,

10    hallucinations, panic attacks, and inability to pay attention. AR 139–40. During the final few

11    months at his job, he was missing work two to three days per week because of his symptoms. AR

12    141–43. When he did attend work, he was not able to stay for an entire workday. AR 143.

13        Plaintiff stated he still experienced hallucinations while taking his prescribed

14    medications, although they were less intense than they were previously. AR 145. Even at home,

15    he would often experience visual hallucinations and, "if things take a downturn which they can

16    and they do," he would also experience auditory and tactile hallucinations. AR 146. Plaintiff felt

17    stress and anxiety aggravated his hallucinations, and interacting with others made him stressed

18    and anxious. AR 146–47.

19        The ALJ found Plaintiff had the severe impairments of schizoaffective disorder,

20    generalized anxiety disorder, and major depressive disorder. AR 20. Despite these impairments,

21    the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels

22    with certain nonexertional limitations: he could never interact with the public but could interact

23    with supervisors frequently and coworkers occasionally, and he was limited to simple but

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

1   detailed tasks. AR 22.

2       The ALJ found the medical record supported these functional limitations given Plaintiff's

3   severe impairments. AR 26. However, he found Plaintiff's allegations regarding the intensity,

4   persistence, and limiting effect of his symptoms were "not entirely consistent with the medical

5   evidence" and "appear[ed] out of proportion and not as debilitating as alleged." *Id.* The ALJ

6   gave four reasons for discounting Plaintiff's allegations about the severity of his symptoms: 1)

7   Plaintiff's treatment was conservative; 2) Plaintiff's symptoms were adequately managed with

8   treatment; 3) the objective evidence in the record, specifically mental status examination

9   ("MSE") findings, supported a greater level of functioning than alleged; and 4) Plaintiff's

10  described activities of daily living were inconsistent with his alleged symptoms. AR 26–27.

11          A.  *Conservative Treatment*

12      The ALJ first addressed the treatment record for Plaintiff's impairments, finding

13  Plaintiff's allegations about the severity of his symptoms inconsistent with his treatment, which

14  was limited to "generally conservative treatment options." AR 26. The ALJ explained:

15      Given the claimant's allegations, one would expect to see more progressive
        treatment options. With respect to the claimant's alleged mental health
16      impairments, the record revealed no evidence of admissions or hospitalizations
        related to the claimant's mental health. The lack of progressive treatment for the
17      claimant's alleged impairments demonstrated during the period of consideration
        appears to be more consistent with the residual functional capacity than with the
18      claimant's allegations.

19  *Id.*

20      Evidence of conservative treatment is an acceptable reason to discount testimony about

21  the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). But when

22  considering whether "the frequency or extent of the treatment sought by an individual is not

23  comparable with the degree of the individual's subjective complaints," an ALJ must consider

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

1    "possible reasons [an individual] may not comply with treatment or seek treatment consistent

2    with the degree of his or her complaints." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *9 (Oct.

3    25, 2017). "Any evaluation of the aggressiveness of a treatment regimen must take into account

4    the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

5              The record shows Plaintiff attended regular mental health counseling sessions and

6    medication management appointments to address his mental impairments. *See* AR 497–608 (July

7    7, 2021, to April 29, 2022), 629–63 (May 26, 2022, to September 7, 2022), 680–784 (October 5,

8    2022, to July 5, 2023). He was prescribed multiple psychotropic medications, including lithium

9    and lamotrigine for schizoaffective/bipolar disorder, quetiapine for psychotic symptoms,

10   bupropion for anxiety, citalopram for depression, and vyvanse for ADHD, which were adjusted

11   throughout the relevant period to address his symptoms. *See, e.g.*, AR 501, 510, 550, 560, 694–

12   95, 776.

13             Here, the record shows Plaintiff pursued ongoing treatment for his symptoms and

14   generally followed the treatment recommendations of his providers. The ALJ did not provide any

15   citations to the record identifying any other "progressive treatment options" recommended by

16   providers or showing that hospitalization or impatient treatment were recommended by providers

17   or appropriate for Plaintiff's conditions. Accordingly, the ALJ's finding that Plaintiff's treatment

18   was conservative and not progressive does not constitute a specific, clear, and convincing reason

19   supported by substantial evidence for discounting Plaintiff's testimony.

20             B.  *Symptoms Well-Managed*

21             Next, the ALJ found Plaintiff's "symptoms either improved or [were] well managed with

22   appropriate treatment." AR 26. In support of this finding, the ALJ cited eight treatment records

23   from May 2021 to May 2023 reporting improvement in Plaintiff's symptoms. *Id.* He wrote,

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1  "[t]here is nothing found in these treatment notes that suggest the claimant would be unable to do

2  work with the additional limitations" specified in the RFC. AR 26–27.

3      "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim

4  of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). However, the Ninth

5  Circuit has recognized that it is common for symptoms of mental health impairments to "wax

6  and wane in the course of treatment," and therefore:

7      Reports of "improvement" in the context of mental health issues must be interpreted
       with an understanding of the patient's overall well-being and the nature of [their]
8      symptoms. They must also be interpreted with an awareness that improved
       functioning while being treated and while limiting environmental stressors does not
9      always mean that a claimant can function effectively in a workplace.

10  *Garrison*, 759 F.3d at 1017.

11      As Plaintiff points out, "[t]he ALJ's finding of improvement focused almost exclusively

12  on Plaintiff's mood and anxiety disorders." Dkt. 9 at 7. The ALJ's decision cited to only one

13  example of improvement in Plaintiff's psychotic symptoms: a medication management visit in

14  May 2021 at which Plaintiff reported his "psychosis [had] improved." AR 26 (citing AR 477).

15  But the record shows Plaintiff later reported periods of worsening hallucinations. *See* AR 407,

16  517, 536, 570, 651, 694. In the overall context of treatment during the period at issue, the ALJ's

17  citation to a single note showing improvement in Plaintiff's psychotic symptoms is not sufficient

18  support for the finding that Plaintiff's psychotic symptoms were well managed and is therefore

19  not a clear and convincing reason for discounting Plaintiff's testimony.

20      C.  *Objective Evidence*

21      The ALJ next found the objective evidence in the medical record supported a greater

22  level of functioning than that alleged by Plaintiff. AR 27. In support of this finding, the ALJ

23  cited to ten MSEs from May 2022 to June 2023, stating:

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

1

2

3

4

5

6
   [R]ecent mental status examinations revealed, in part, the claimant was alert and
oriented; he interacted appropriately and was cooperative; his attention and
concentration appeared grossly intact; there were no over agitation or abnormal
movements; there were no psychomotor activity agitation or retardation; speech
was normal; memory, impulse control, judgement, and insight were grossly intact;
thought process was logical and linear; and the claimant denied paranoid ideation
or delusional content. Accordingly, despite the claimant's severe impairments, the
objective evidence in the medical evidence of record is inconsistent with the
claimant's allegations and do not support a more restrictive residual functional
capacity.

7
*Id.* (citing AR 631, 645, 655–56, 683, 696, 717, 731, 747, 760, 777).

8
   All the cited MSEs were recorded by the provider who performed Plaintiff's medication

9
management. Each of the provider's notes indicated the MSE was "reviewed and updated this

10
session," although much of the information in this section of the notes remained nearly identical

11
throughout these visits. One notable exception, which the ALJ omitted from his summary of the

12
recent MSEs, was that Plaintiff began endorsing "occasional auditory, visual and olfactory

13
hallucinations" in November 2022. *See* AR 696, 717, 731, 747, 760, 777. The ALJ's failure to

14
acknowledge these symptoms undermines his conclusion that these records are inconsistent with

15
Plaintiff's testimony and do not support a more restrictive RFC.

16
   Additionally, MSEs conducted by other providers during the same time period reported

17
abnormal findings such as delayed speech and blunted affect. *See* AR 650, 701, 708, 712, 740,

18
750, 765, 769, 772, 782. Although the ALJ is responsible for resolving conflicts in the evidence,

19
he must explain his reasoning to allow for this Court's review. *See Ford v. Saul*, 950 F.3d 1141,

20
1149 (9th Cir. 2020); *Brown-Hunter*, 806 F.3d at 492. Here, the ALJ provided no explanation for

21
favoring one provider's MSE findings over other evidence in the record. In the absence of such

22
explanation, the Court cannot conclude substantial evidence in the record supports the ALJ's

23
characterization. This reason therefore cannot be considered a clear and convincing reason to

24
discount Plaintiff's testimony.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

1        D. *Activities of Daily Living*

2        Finally, the ALJ found Plaintiff's descriptions of his activities of daily living were

3  inconsistent with his allegations of disability:

4        The claimant is able to care for personal hygiene independently, prepare meals, and
        perform household chores, to include cleaning and laundry. The claimant is able to
5        operate a motor vehicle. Moreover, the claimant is able to utilize a computer. The
        claimant is able to go shopping for groceries as needed. Additionally, the claimant
6        stated that he is able to manage his personal finances independently, to include
        paying bills, counting change, handling a savings account, and using a checkbook.
7        Furthermore, the claimant's hobbies include playing video games, and watching
        YouTube and cartoon[s]. The record revealed the claimant also enjoyed writing
8        science-based fiction. Finally, the record revealed the claimant was able to workout
        during this period. For these reasons, the claimant's allegations concerning the
9        severity of his symptoms are not entirely consistent with the evidence and any
        limitations imposed by the claimant's impairments were accounted for sufficiently
10       in the residual functional capacity.

11  AR 27 (internal citations omitted).

12        "Engaging in daily activities that are incompatible with the severity of symptoms alleged

13  can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th

14  Cir. 2014). However, the Ninth Circuit has recognized that not all activities are incompatible

15  with disability:

16        [T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery
        shopping, driving a car, or limited walking for exercise, does not in any way detract
17       from [their] credibility as to [their] overall disability. One does not need to be
        'utterly incapacitated' in order to be disabled.
18

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597,
19

603 (9th Cir. 1989)).
20

21        Here, the ALJ listed Plaintiff's activities and then summarily stated that these activities

22  were not consistent with Plaintiff's allegations about his symptoms without any explanation as to

23  how the activities were inconsistent with Plaintiff's hearing testimony. Because the ALJ did not

24  explain "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony," the ALJ

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1   erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *see also*

2   *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate

3   and logical bridge from the evidence to her conclusions so that we may afford the claimant

4   meaningful review of the SSA's ultimate findings.").

5          Additionally, the ALJ's characterization of Plaintiff's activities is not entirely supported

6   by the record. The ALJ cited to Plaintiff's function report for the assertions that Plaintiff was

7   able to care for personal hygiene independently, prepare meals, perform household chores,

8   operate a motor vehicle, utilize a computer, shop for groceries, and manage his personal

9   finances. AR 27 (citing AR 318–21). In contrast to the ALJ's findings, Plaintiff's function report

10  described significant challenges managing personal care and hygiene, including going weeks

11  without showering or changing clothes and urinating in bottles to avoid leaving his room. AR

12  318. Plaintiff wrote that his father managed his medications so that he did not forget to take them

13  or overdose. AR 319. He also indicated that he did not prepare his own meals. *Id.* Plaintiff wrote

14  that he was able to drive a car but noted "dissociation makes driving and being outside difficult"

15  and indicated that he needed someone to accompany him when he went out, writing, "I try not to

16  drive too much because I can't focus very well on driving. My mood affects my motor functions

17  too." AR 320–21. Although he indicated he was able to pay bills and count change, Plaintiff

18  indicated he could not handle a savings account or use a checkbook or money order. AR 320.

19         The ALJ cited to one page of a progress note dated November 9, 2022, for the finding

20  that Plaintiff was "able to workout [sic] during this period." AR 27 (citing AR 691). At that

21  therapy session, Plaintiff acknowledged that he felt better when he consistently exercised four

22  times per week and stated he "lift[ed] weights and [did] cardio" but expressed difficulty with

23  motivation to exercise. AR 691. The ALJ also cited to one page of a progress note from May 24,

24

2023, for the note that Plaintiff enjoyed writing science-based fiction. AR 27 (citing AR 757). The ALJ does not explain how this is inconsistent with Plaintiff's symptom testimony.

The ALJ finding that Plaintiff's descriptions of his activities of daily living were inconsistent with his allegations of disability is therefore not a specific, clear, and convincing reason to discount Plaintiff's testimony.

Because the ALJ did not supply any specific, clear, and convicting reason supported by substantial evidence in the record for discounting Plaintiff's testimony about the severity of his symptoms, the ALJ erred. This error was not harmless. Had the ALJ properly addressed this testimony, he may have included additional limitations in Plaintiff's RFC or reached a different conclusion regarding disability. Accordingly, remand for further proceedings is appropriate.

**IV.    Conclusion**

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled beginning July 1, 2021. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 5th day of November, 2024.

David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12